## CHANCERY.

Le Roy and others *v.* Veeder and others, 1 J. C. 417–429.

S. C. Caines C. E. p. 1.

### *Discovery ; Relief ; Demurrer.*

The appellants (complainants below) exhibited their bill in Chancery against the respondents and 16 other defendants, in which they set forth that Governor Sir Henry Moore, on the 2d of February, 1768, purchased of the native Indians, a tract of land containing 25,000 acres, then in the county of Albany, now in the county of Montgomery, for the use of Peter Lewis, and about 25 others, named in the bill; who thereupon petitioned for a patent, which issued to them accordingly, on the 28th February, thereafter; that in consideration of money, (and other valuable consideration not known to the plaintiffs,) paid or delivered or performed by the late Sir William Johnson, of the said county, to the petitioners, and as he agreed to pay all fees, &c., for the patent, it was agreed between him and the petitioners, that when the patent should be made to them, they would receive it in trust for him, and when the title should become vested in them, that they would convey to him; that he accordingly paid the fees, £600; that in pursuance of the agreement, when the title became vested in the patentees, they did convey to him in fee simple the whole 25,000 acres; that Sir William took possession of the whole in a short time after the conveyance, caused it to be surveyed, and the bounds designated by marking trees, &c. That Sir William, on the 11th of June, 1772, for £375, conveyed 10,000 acres of it to Lord A. Gordon, the boundary line of which appears to have been according to a survey made for that purpose; that soon after, Sir W. conveyed another parcel containing 2,000 acres to John Kelly; that by his will of the 27th of January, 1774, he devised the remaining 13,000 acres to his two brothers and four sisters, and directed his executors to sell the same, and the moneys to be equally divided between the devisees; and shortly after

he died. That Lord A Gordon, on the 27th of May, 1787, conveyed the tract of 10,000 acres to R. and J. Watts, who on the 5th of December, 1792, conveyed it to the complain‧ ants, Le Roy and Bayard, for £5,000; that R. and J. Watts, as attorney to the executors of Sir William Johnson on the 13th of November, 1792, conveyed the tract of 13,000 acres to the same complainants, and that the third of the lands was afterward vested in the complainant Boon.

The bill then stated that in the early part of the late war with Great Britain, Sir John Johnson, the son and one of the executors of Sir William, buried in the earth sundry title deeds and papers, and among them the deeds, &c., of the 25,000 acres, for the purpose of guarding against their loss, &c., where they remained several years: but when taken up, were so injured and defaced, as to be altogether illegible; and these conveyances of the lands, were by these means, *either lost or destroyed,* or by some other accident, are now wholly out of the power of the complainants to produce; that nine of the defendants in the bill, and the other twenty-one defendants confederating with them, intending to avail themselves of the loss or destruction of the conveyances to Sir William, and pretending that they claimed title under sales to them by the original patentees, or persons deriving title from them, had commenced a suit in ejectment against Boon, in the Supreme Court, he being the only one of the defendants residing on the lands; and that the defendants had no such title as they pretended. The bill prayed that the defendants might answer and discover and set forth their title, and whether the persons under whom they claim title, were ever in possession of the land; that the lessor in ejectment be enjoined from proceeding, and that complainants be quieted in their possession, and for further relief.

Boon was the only complainant who made the affidavit annexed to the bill, which it substantially verified. That part of it relating to the deeds from the patentees to Sir. W., and the destruction of them was as follows:—

" And the said deponent has been informed and verily believes and hopes to prove that the deeds (in question) did

exist and were lost in the manner mentioned in the bill." There was no affidavit by the other two complainants.

To this bill some of the defendants answered, but fourteen of them, (the respondents in this appeal), separately filed general demurrers, and set forth as causes of demurrer :

1. That all the complainants had not verified their bill, and the facts stated as to the loss of deeds, &c.

2. That the agreement between Sir William and the patentees, thus to obtain a patent to the use of Sir William, was illegal, it being in fraud of, and in contravention of the instruction from the king to the governor, not to grant patents of land exceeding 1,000 acres to each patentee.

3. That the bill charging that defendants hold under a conveyance to them by some person having a pretended title to the land, and praying a discovery, the defendants, if the charge is true, would be subject to a grievous penalty.

4. That the bill is filed to discover the defendant's title, and to quiet the complainants in their possession, before the complainants have established their title at law.

5. That the complainants' title set forth in the bill, is matter merely triable at law, and may be tried in the ejectments brought by the defendants.

6. That the bill contains no equity.

The Chancellor, Livingston, allowed all the demurrers and dismissed the bill with costs. On appeal

The Court of Errors held, Benson, J., delivering the opinion of the court, that the demurrers must be overruled.

1. That the affidavit of Boon verifying the bill, was sufficient.

2. That whether the agreement between Sir William and the patentees was illegal or not, from being obtained for his use, against the royal instruction, (which was not decided), yet to avoid a *discovery* upon the ground set up by the defendants, that a discovery might subject them to a penalty for buying a pretended title, it must appear by plea or answer, that the defendants would be subjected to such penalties.

3. That if a complainant be properly before the court for a discovery, and at the same time prays relief, a general demurrer to the bill for want of equity is bad, unless it is clear

on the face of the bill, that no *discovery* or *proof* can make the case stated in it a proper subject of equitable jurisdiction and cognizance.

4. That where several defendants in Chancery put in separate demurrers, on which separate decrees were given, the Court of Errors may, on reversal of those decrees, oblige each respondent to pay to the appellants their *costs, on each respective decree so reversed.**

Decree accordingly *reversed ;* and the decree of reversal ordered the respondents severally to pay the appellants thirty dollars for their *costs on this appeal,* in respect to each decree reversed, &c.

* See *Le Guen* v. *Kemble, post.*

